**In re Ronald I. VAILS, Sr., Respondent.**

**No. 70526.**

Supreme Court of Missouri, En Banc.

April 18, 1989.

Gerald M. Poger, St. Louis, for informant.

Donald L. Wolff, St. Louis, for respondent.

RENDLEN, Judge.

This disciplinary action was instituted by the Advisory Committee of the Missouri Bar, which conducted a formal hearing and found probable cause to believe respondent was guilty of professional misconduct. The Committee then filed its information charging violation of Supreme Court Disciplinary Rules 1–102(A)(1) and 1–102(A)(4), 2–107(A), (B), 2–111(A)(2)–(3), 6–101(A)(3), and 7–101(A)(1)–(3), effective January 1, 1971; and of Rule 8.4(a) and (d) of the Missouri Rules of Professional Conduct, effective January 1, 1986. Appointed by the Court as Special Master, the Honorable Robert G. Dowd, Jr. made findings of fact

and recommended disbarment; though not bound by those findings and cognizant that we may determine the facts for ourselves, *In re Murphy*, 732 S.W.2d 895, 902 (Mo. banc 1987), we in large part agree with the facts found by the Master, but not with the suggested sanction.

These proceedings arise from Minnie Vick's employment of respondent in June, 1985 to draft an agreement setting forth the ownership rights in a parcel of property which she had purchased with a friend. On June 25, Ms. Vick paid respondent's fee with two checks of $175.00, which respondent cashed the following day. He promised the clients the agreement would be drafted within the next week; however, Ms. Vick testified that she has never received the agreement. Though she attempted to contact respondent six or seven times, respondent had not personally replied, and she spoke with his secretary instead. In slightly less than two months following her first contact with respondent, Ms. Vick filed a complaint with the Bar Association of Metropolitan St. Louis requesting arbitration of a fee dispute, though the matter seems more akin to tardy performance than a "fee dispute." Respondent failed to answer phone calls from the Bar Association's investigator but did respond to letters. He told the investigator that he had not had a chance to finish the work and would refund the money to Ms. Vick. Upon his failure so to do, an arbitration hearing was conducted on February 4, 1986, but respondent failed to attend. The arbitrator ruled that respondent should refund the fee, and on respondent's continuing delay, the Advisory Committee of the Missouri Bar notified him by a letter of January 19, 1988, that it would proceed with a hearing if he did not explain his conduct. A similar letter was sent February 8, and on failure to respond he was notified of an informal hearing to be held on March 24, 1988. Respondent again failed to appear, whereupon the committee notified him by certified mail of its formal hearing to be held on April 28, 1988, but respondent, consistent with his prior performance, again declined or neglected to attend.

The Advisory Committee filed its information in this Court May 18, 1988, and within a month respondent mailed a check for $385 (which included interest), accompanied by a letter of apology to Ms. Vick, but the check was returned for insufficient funds. Respondent answered the information on June 17, enclosing a copy of the property agreement, and finally broke his pattern of nonappearance by attending a pretrial conference before the Master on June 30. At that meeting, respondent waived his right to an evidentiary hearing and agreed to submit the case on the record contained in the legal file and documents submitted with notice to the opposing party. He also promised to send $385 to Ms. Vick by July 11, but delayed so doing until September 13, after the Master had inquired concerning the delay.

In our examination of the proceeding under the disciplinary rules, the Master's findings and conclusions are essentially advisory to this Court, and we must "review the evidence, assign credibility to witness testimony, and make all necessary factual determinations." *In re Staab*, 719 S.W.2d 780, 781 (Mo. banc 1986). Each alleged violation of a disciplinary rule must be established by a preponderance of the evidence as a predicate to respondent's guilt. *In re Murphy*, 732 S.W.2d at 902. We have no doubt that respondent neglected a legal matter entrusted to him, DR 6–101(A)(3), intentionally failed to seek the lawful objectives of his client through reasonably available means, DR 7–101(A)(1), and intentionally failed to carry out a contract of employment. DR 7–101(A)(2). Though respondent included a copy of the completed agreement with his answer to the information, the evidence does not clearly indicate when the agreement was drafted, and Ms. Vick consistently testified that she had at no time received a copy of the agreement. We, therefore, find a violation of these rules established by a preponderance of the evidence.

Further, the evidence establishes that respondent in effect withdrew from employment without notifying his client and without promptly refunding unearned portions

of the fee, contrary to DR 2–111(A)(2) and (3).[1] *See In the Matter of Striebel,* 744 S.W.2d 778, 779–80 (Mo. banc 1988). Though respondent, at some point, drafted the agreement, it was certainly not delivered in a timely fashion to the client. His conduct and statements before the disciplinary authorities, while not expressly announcing an intent to abandon his employment, produced an inordinate delay. This, coupled with the protracted disinclination to return the fee as promised, justifies our finding the violation of those rules.

Nevertheless, we do not find his conduct resulted in "prejudice" or "damage" to the client in contravention of DR 7–101(A)(3). Though the proposed agreement was to describe the interests of the owners as cotenants of the property, nothing was presented demonstrating that they were in any way damaged or prejudiced because they failed to receive the written contract memorializing their agreement. Nor can we agree that respondent charged an excessive fee for the service to be performed within the meaning of DR 2–107(A) and (B). The evidence establishes that respondent spent a total of at least an hour on two different occasions in consultation with Ms. Vick and her co-purchaser. His assistant conferred with Ms. Vick by telephone and this was followed by correspondence requesting additional documentation. In addition, time was required to perform necessary research and draft the agreement. We cannot hold the agreed fee was clearly excessive in violation of the rule. *Cf. In the Matter of Kinghorn,* 764 S.W.2d 939, 940–41 (Mo. banc 1989).

The information also charges respondent with "conduct involving dishonesty, fraud, deceit, or misrepresentation," DR 1–102(A)(4), evidently premised on his failure to fulfill his promise to Ms. Vick that the agreement would be drafted and the delayed performance of his promise to the Bar Association investigator that he would refund the fee.[2] While the evidence fails to support that charge, in a related point he is charged with "engag[ing] in conduct that is prejudicial to the administration of justice," Rule 8.4(d), for refusing to cooperate with the Advisory Committee. We agree that his persistent failure to appear when requested and his procrastination in refunding the fee constitutes trifling with the disciplinary process, which warrants a finding of conduct prejudicial to the administration of justice. *See In re Forge,* 747 S.W. 2d 141, 144–45 (Mo. banc 1988).

In determining the sanction to be imposed, we may properly consider mitigating circumstances, including respondent's trying personal circumstances and resulting emotional problems, which are described in the record by a psychologist's report filed in response to the Master's findings. *See In re Kopf,* 767 S.W.2d 20, 23 (Mo. banc 1989); *In re Staab,* 719 S.W.2d at 785. Respondent's personal problems, which we need not here detail, are lamentable, but they occurred for the most part during the period of the disciplinary process, rather than during his initial representation of Ms. Vick, and it would seem that the prospect of jeopardizing his livelihood in these proceedings would have prompted performance of the agreed legal service or a refund of the fee collected. Hence, the mitigating factors are insufficient to absolve respondent from the consequences of his conduct.

Mindful that the primary purpose of discipline is not to punish the attorney but to

---

1. Rule 4, DR 2–111, in vogue during 1985, provides, in part, as follows:

   (A) In general.

   (2) In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.

   (3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.

2. We note that respondent's promise to return the funds was made in February 1986, at which time our new Rules of Professional Conduct were in effect. Rule 8.4(c) is substantially the same as prior DR 1–102(A)(4), and though technically both rules should have been cited, respondent was adequately informed of the charges against him and the facts supporting these charges.

protect the public and maintain the integrity of the legal profession, we have often held that disbarment is appropriate only when it is clear that respondent should not be at bar, while a reprimand is appropriate for isolated acts not involving dishonest, fraudulent or deceitful conduct, *In re Littleton,* 719 S.W.2d 772, 777 (Mo. banc 1986), and in many cases we have decided that the intermediate sanction of suspension is proper. *Id.* Though the evidence does not demonstrate that respondent is manifestly unfit to be at the bar, he has clearly neglected his professional duties. Considering the circumstances of this case and noting that nothing in the record demonstrates prior professional misconduct, we order that respondent be suspended from the practice of law for six months. *See In re Forge,* 747 S.W.2d 141, in which a suspension of only six months was imposed for conduct somewhat comparable but in part more egregious than that at bar. Costs of this proceeding are assessed against respondent.

BILLINGS, C.J., and BLACKMAR, ROBERTSON, HIGGINS and COVINGTON, JJ., concur.

WELLIVER, J., dissents in separate opinion filed.

WELLIVER, Judge, dissenting.

I respectfully dissent.

The Special Master concluded and found, among other things that

"It is the pattern of behavior by respondent that requires serious review. Respondent has known since June of 1985 of his obligation to Mrs. Vick. Respondent has had countless opportunities since then to rectify the matter. Respondent has not only failed to do so, he has consistently failed without good cause to respond to or cooperate with the numerous Bar proceedings against him ... Even after this matter was referred to this Master by the Supreme Court of Missouri and even after this Master informed respondent that disbarment was one of the discipline possibilities, respondent again failed to satisfy his obligation.

The fact that proof of payment was finally submitted more than 60 days after it was promised and without explanation is insufficient mitigation when the totality of the circumstances are considered.

This Master is keenly aware that disbarment is the ultimate punishment of an attorney. However, respondent has chosen to totally ignore his obligation as an attorney. Behavior which amounts to disdain and defiance against the Supreme Court's Rules cannot be tolerated."

I find the reasoning and recommendation of the Special Master to be more in harmony with our purpose of protecting the public.

The statute provides that even if disbarred, upon proper showing made by the respondent, he can after one year make application for reinstatement. Section 484.-270, RSMo 1986.

Disbarment, or the withdrawal of respondent's privilege to practice law, together with the statutory right to reapply after one year, is neither unfair nor unjust to respondent in view of the degree of his misconduct.

Respondent should be disbarred.