**In re Wilson GRAY, Respondent.**

No. 72780.

Supreme Court of Missouri,
En Banc.

July 23, 1991.

**310**

H. Gray, St. Louis, for respondent.

### ORIGINAL DISCIPLINARY PROCEEDING

DON W. KENNEDY, Special Judge.

The Bar Committee of the Twenty-second Judicial Circuit, pursuant to Supreme Court Rule 5, filed an information against Wilson Gray, charging him with conduct violative of the following provisions of Rule 4, repealed January 1, 1986: DR 1–102(A)(1), (5), and (6); DR 6–101(A)(3); DR 7–101(A)(1), (2) and (3); and violative of Rule 4 of the Code of Professional Conduct, effective January 1, 1986, especially Rule 1.1 thereof; Rule 1.3 thereof; and Rule 1.4(a) and (b) thereof. The events of the present case took place partly while the Canon of Ethics was in effect, until January 1, 1986, and partly after that date, when the present Rules of Professional Conduct became effective.

The Honorable Susan E. Block, the special master appointed by this Court, heard evidence and submitted findings of fact and conclusions of law. The special master's findings and conclusions are only advisory, and this Court is required to determine facts and conclusions for itself. *In re Murphy*, 732 S.W.2d 895, 902 (Mo. banc 1987). We adopt, in the main, after reviewing the evidence, the findings and conclusions of the special master. We find, in agreement with the findings of the special master, the following facts:

Respondent Wilson Gray was admitted to the Bar in 1945. At all times relevant hereto, he practiced law in the City of St. Louis as a sole practitioner, with the aid of a secretary. Mr. Freddie Butler came to respondent's office on September 27, 1984, with the purpose of enlisting respondent's services to secure a dissolution of marriage

for him. Respondent was not in the office, but the secretary, after conferring with respondent by telephone, told Mr. Butler the cost of the divorce would be $185, including court costs, and that an advance payment of $85 was required. Mr. Butler gave the secretary the information she requested, signed a document in blank, and paid $85 in cash. The secretary told Mr. Butler respondent would call him to set up an office conference about the matter.

Mr. Butler, having heard nothing from respondent, called him a couple of months later. Respondent told Mr. Butler the sheriff's office had been unable to serve Mrs. Butler with summons, and that respondent was attempting to locate her. The fact was, as it was later learned, the Butler petition had not been filed.

Butler continued to call respondent periodically. Each time, respondent said he was still unable to have Mr. Butler's wife served with process, until shortly before June 6, 1985. This time, respondent said he could do nothing further on the dissolution case until he got the $100 balance due. This was the first time he had mentioned to Mr. Butler the payment of the balance. Mr. Butler paid the $100 balance in cash to respondent's secretary on June 6, 1985.

Respondent filed the petition for dissolution in the Circuit Court for the City of St. Louis on August 7, 1985. A summons was issued on that date, and a non-est return was filed September 12, 1985. At the same time as the filing of the petition, there were filed a statistical information form, a statement of income and expense form, and a statement of property form, all purportedly signed by Mr. Butler and notarized by respondent on various dates. Mr. Butler denied signing them and denied he was in respondent's presence on any of the dates borne by the respective documents.

Whether before or after the filing of the petition, respondent, when Mr. Butler called him on the phone, said that he needed an additional $165 for additional action in connection with the dissolution proceeding. Mr. Butler declined to pay this $165, because he felt he had gotten nothing for the $185 already paid. Mr. Butler's efforts

to talk with respondent in person failed. His repeated telephone calls brought him no satisfaction. Respondent failed on more than one occasion to keep appointments set up by Mr. Butler with respondent's secretary. Mr. Butler never met respondent in person until March 10, 1989, when they both appeared before the Bar Committee to testify with respect to Mr. Butler's complaint against respondent.

On December 15, 1986, the court dismissed the Butler dissolution case for failure to prosecute, and taxed costs against Mr. Butler. Respondent had not notified Mr. Butler his case was on the dismissal docket and did not advise him after the case was dismissed. Mr. Butler learned this on his own by checking the court records.

Mr. Butler has demanded the refund of the $185 paid to respondent, but it has not been repaid. Respondent, in his testimony before the special master, expressed a willingness to return the money to Mr. Butler.

Respondent testified he required the additional $165 for publication of notice to the wife, who was employed by Greyhound as a bus driver and was a resident of Texas, and that Mr. Butler's refusal to pay the additional $165 was considered by respondent to be an abandonment of the dissolution suit. Mr. Butler testified that his wife lived in St. Louis at the time he first employed respondent at an address that he gave to respondent's secretary at the time of his first visit to respondent's office, and that she continued for some time thereafter to live at the same address.

We adopt the following "Conclusions of Law" of the special master:

1. Respondent's failure: to file a Petition for Dissolution of Marriage on behalf of Freddie Butler from September 27, 1984, until August 7, 1985; to return Mr. Butler's phone calls; to communicate with Mr. Butler by telephone or correspondence during respondent's representation of Mr. Butler; to remember and recognize his client, Freddie Butler; and to prosecute Mr. Butler's Petition for Dissolution of Marriage from September 27, 1984, through December 31, 1985, constitute violations of DR 1–102(A)(1) [1] and (A)(6) [2], *In re Striebel*, 744 S.W.2d 778, 779–80 (Mo. banc 1988), and DR 6–101(A)(3) [3], *In re Murphy*, 732 S.W.2d at 903.

2. Respondent's failure to file the Petition for Dissolution of Marriage on behalf of Freddie Butler from September 27, 1984, until August 7, 1985, constitutes a violation of DR 7–101(A)(1) [4], (A)(3). [5] *In re Striebel*, 744 S.W.2d at 779–80.

3. Respondent's notarization of documents not reviewed by Freddie Butler or executed by Freddie Butler in Respondent's presence constitutes a violation of DR 1–102(A)(5) [6], as alleged in the Information.

4. Respondent's failure to prosecute Freddie Butler's Petition for Dissolution of Marriage from and after January 1, 1986, resulting in the dismissal of Freddie Butler's said Petition for Dissolution of Marriage, without prejudice, for failure to prosecute on December 15, 1986, constitutes a

1. DR 1–102. Misconduct
 (A) A lawyer shall not:
  (1) Violate a Disciplinary Rule.

2. DR 1–102. Misconduct
 (A) A lawyer shall not:
  (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

3. DR 6–101. Failing to Act Competently
 (A) A lawyer shall not:
  (3) Neglect a legal matter entrusted to him.

4. DR 7–101. Representing a Client Zealously
 (A) A lawyer shall not intentionally:
  (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer

does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of this client, by being punctual in fulfilling all professional commitments by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

5. DR 7–101. Representing a Client Zealously
 (A) A lawyer shall not intentionally:
  (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B).

6. DR 1–102. Misconduct
 (A) A lawyer shall not:
  (5) Engage in conduct that is prejudicial to the administration of justice.

**312**

violation of Rule 1.1[7] and Rule 1.3[8], as alleged in the Information.

5. Respondent's failure to return Mr. Butler's telephone calls and to communicate with Mr. Butler by telephone or correspondence after January 1, 1986, and Respondent's failure to advise Freddie Butler that his Petition for Dissolution of Marriage had been dismissed, without prejudice, for failure to prosecute, constitute a violation of Rule 1.4[9], as alleged in the Information.

We have concluded that respondent should be reprimanded for his violations of the disciplinary rules noted above. In addition to said reprimand, respondent is ordered to repay to Mr. Butler, within thirty days of the date judgment becomes final, the sum of $185, together with interest at the rate of 9 per cent per annum until the same is paid. Interest shall be calculated on $85 thereof (21 cents per day) from September 27, 1984, and on $100 (22 cents per day) from June 6, 1985.

ROBERTSON, C.J., RENDLEN, COVINGTON, HOLSTEIN and BLACKMAR, JJ., and HIGGINS, Senior Judge, concur.

---

7. Rule 1.1  Competence
  A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

8. Rule 1.3  Diligence
  A lawyer shall act with reasonable diligence and promptness in representing a client.

9. Rule 1.4  Communication
  (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
  (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.